919 A.2d 194

**Victor M. SACKETT and Diana L. Sackett, Appellants,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 13, 2006.

Decided April 17, 2007.

418

Scott B. Cooper, Esq., Schmidt, Ronca & Kramer, P.C., Ronald James Bergman, Esq., Nedwick & Bergman, Harrisburg, for Victor M. Sackett, et al.

John W. Pollins, III, Esq., Greensburg, for Pennsylvania Trial Lawyers Association.

Peter B. Skeel, Esq., Summers, McDonnell, Hudock, Guthrie & Skeel, L.L.P., Pittsburgh, for Nationwide Mutual Insurance Company.

Teresa Ficken Sachs, Esq., Post & Schell, P.C., Philadelphia, for amicus curiae Pa. Defense Institute, Insurance Federation of Pa., and Property Casualty Insurers Assoc.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Justice BALDWIN.

■ In this matter, we are asked to resolve a pure question of law.[1] Does the Pennsylvania Motor Vehicle Financial Responsibility Law (the MVFRL), 75 Pa.C.S. §§ 1701–1799.7, require automobile insurers to provide first named insureds the opportunity to waive the stacked limits of uninsured/underinsured (UM/UIM)[2] coverage for each instance an insured purchases UM/UIM coverage by adding a vehicle to an existing policy?[3,4] The answer is yes. The Legislature has

1. In reviewing such questions of law, our standard is *de novo* and we apply a plenary scope. *Craley v. State Farm Fire and Cas. Co.*, 586 Pa. 484, 895 A.2d 530, 539 n. 14 (2006).

2. For the statutory definitions of uninsured and underinsured motor vehicles, see 75 Pa.C.S. § 1702.

3. *See generally McGovern v. Erie Ins. Group*, 796 A.2d 343, 344 (Pa.Super.2002) ("The basic concept of stacking is the ability to add the coverages available from different vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy."); 75 Pa.C.S. § 1738(a).

4. Section 1738 of the MVFRL, which provides "Stacking of uninsured and underinsured benefits and option to waive," provides, in relevant part:

(a) Limit for each vehicle—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

(b) Waiver—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

(c) More than one vehicle—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

(d) Forms—
. . .

(2) The named insured shall be informed that he may exercise the waiver of the stacked limits of underinsured motorist coverage by signing the following written rejection form:

provided the Statutory Construction Act for resolution of such questions of law. 1 Pa.C.S. §§ 1501–1991. Section 1921(a) of the Statutory Construction Act instructs that we interpret a statute as a whole. Doing so leads to one conclusion—that Section 1738 of the MVFRL can only be read to require that when a new car is added to an existing policy and UM/UIM coverage is purchased insurers must provide new Section 1738(d) stacking waivers in order to permit the insured to waive the increased amount of available stacked UM/UIM coverage. Such a purchase of UM/UIM coverage occurred under the facts presented in this case, but the insured was denied the opportunity to waive the increased amount of available stacked UM/UIM coverage. The words of the subject statute, 75 Pa.C.S. § 1738, are unambiguous. "Each named insured purchasing uninsured or underinsured motorist coverage ... shall be provided the opportunity to waive the stacked limits of coverage." *Id.* (emphasis added). "Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words." *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 430, 664 A.2d 84, 87 (1995); 1 Pa.C.S. § 1921(b). Pursuant to the mandates of the Statutory Construction Act, and for the reasons explained in detail below, we must reverse the decision of the Superior Court.

The following facts form the basis of this case. Prior to July 25, 2000, the Appellants, Victor M. and Diana L. Sackett, insured two vehicles on an automobile insurance policy issued by Appellee Nationwide Mutual Insurance Company. Mr.

UNDERINSURED COVERAGE LIMITS

By signing this waiver I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage would be the sum of the limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

(e) Signature and date—The forms described in subsection

(d) must be signed by the first named insured and dated to be valid. Any rejection form that does not comply with this section is void.

75 Pa.C.S. § 1738.

Sackett was the first named insured under the policy issued by Appellee. On July 26, 2000, the Appellants acquired a third vehicle, a 2000 Ford Windstar, which required the Sacketts to purchase additional insurance. On August 5, 2000, Appellant Victor M. Sackett was injured in a motor vehicle. Mr. Sackett was riding as a passenger in a vehicle driven by Robert J. Bulger. The Bulger vehicle was struck by a vehicle driven by an underinsured motorist, Charlynne A. Dicks. Mr. Sackett sustained injuries as a result of the accident.

In 1998, when the subject policy incepted, Mr. Sackett selected $100,000.00 in UIM coverage, but rejected stacked limits of that coverage by executing a waiver as prescribed by the MVFRL.[5] When the Sacketts subsequently acquired a third vehicle, Mr. Sackett, the first named insured, was not provided an opportunity to waive stacked UIM coverage. Thus, the dispositive question is, simply, whether the Sacketts' purchase of underinsured motorist coverage upon the addition of the Ford Windstar to the existing policy triggered a duty on Nationwide's part to provide Mr. Sackett with another opportunity to waive stacked UM/UIM coverage.

Following the accident, and after settling with Bulger and Dicks, Appellants asserted a claim for stacked UIM benefits under the Nationwide policy. Nationwide denied coverage. Appellants filed a declaratory judgment action asserting that the UIM coverage available is $300,000.00 (the sum of $100,000.00 for each of their three vehicles). On cross-motions for summary judgment in the declaratory judgment action, and in reliance upon a Third Circuit decision in *Rupert v. Liberty Mut. Ins. Co.*, 291 F.3d 243 (3d Cir.2002), the trial court found that an insurer "does not have a duty to obtain waivers of stacking when the same named insured simply adds a vehicle to the policy," and entered summary judgment in favor of Nationwide. *Sackett v. Nationwide Mut. Ins. Co.*, 2003 WL 25440767, No. 5057 of 2002, slip op. at 5 (Ct.Com.Pl of Westmoreland Cty. Nov. 20, 2003). Specifically, the trial court found that "[t]he language of the statute does not set forth a duty on behalf of the defendant-insurer to offer

5. 75 Pa.C.S. § 1738(d).

additional stacking waiver forms when additional vehicles are added to the policy if [the insureds] have previously executed a waiver of stacking." *Id.* at 3. The Sacketts appealed to the Superior Court.

In a published decision, the Superior Court affirmed the order of the trial court, relying upon *Rupert* and a prior Superior Court decision in *Smith v. Hartford Ins. Co.,* 849 A.2d 277 (Pa.Super.2004). The Superior Court concluded that the trial court was correct for several reasons:

> The Third Circuit's decision, and the decision of then Chief Justice Zappala in *Rupert,* both support a conclusion that a waiver of stacking at the inception of a policy is continually binding. Furthermore, the opinion of Chief Justice Cappy in *Rupert* focused on the issue of constructive notice and knowledge of the insureds, a concern not present in the instant case as none of the insureds under the Nationwide policy, including the first named insured, changed.
>
> Since the *Rupert* decisions were issued, however, this Court has decided *Smith v. The Hartford Ins. Co.* . . ., which, we find aids our resolution herein.

*Sackett v. Nationwide Mut. Ins. Co.,* 880 A.2d 1243, 1247 (Pa.Super.2005).

In *Smith,* the insured waived UIM coverage pursuant to Section 1731 of the MVFRL. At a later date, the insured raised his liability coverage limit. Some time after that, the insured's wife was injured by an underinsured motorist. The trial court held, *sua sponte,* that "by increasing the policy limits the Smiths had purchased a new insurance policy, thereby requiring The Hartford to supply a new rejection form." *Smith,* 849 A.2d at 280. The Superior Court disagreed, finding no statutory authority for the trial court's conclusion, and instead found the opposite indicated within the language of Sections 1731 and 1791 of the MVFRL. In relevant part, Section 1791 of the MVFRL provides as follows:

> Notice of available benefits and limits—
>
> It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided

the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage, and **no other notice or rejection shall be required** . . .

75 Pa.C.S. § 1791 (emphasis added). The Superior Court's decision in *Smith* held that a decision to waive all UIM coverage is presumptively effective throughout the life of the policy unless an affirmative change is made by an insured. *Smith*, 849 A.2d at 281. While the conclusion in *Smith* was required by the relevant statutory language of Sections 1731 and 1791, the instant matter raises a different question, because *Smith* did not involve *stacking* of UM/UIM coverage, or Section 1738 of the MVFRL in any way. The addition of another vehicle to a policy *with* UIM coverage raises different concerns than those addressed by Sections 1731 and 1791. Finally, the *Smith* decision, issued by a lower court, has no binding effect on this Court. For these reasons, we find that *Smith* has no bearing on the outcome of the instant matter.

*Rupert*, like *Smith*, is distinguishable from the case at bar. In *Rupert*, the Third Circuit faced a different but related question of whether a valid waiver of stacked UM/UIM coverage remains effective after the current "first named insured" changes, or must a new waiver form be issued and new rejections executed by the new "first named insured" in order for the validity of the original waiver of stacked UM/UIM coverage to continue. In *Rupert*, the original first named insured died. The surviving husband, who was added to the policy after the waiver was made, claimed the insurer was required to provide him with a waiver form when he became the first named insured following his wife's death. Because he executed no such waiver, the surviving husband argued, "the waiver of stacking was not valid as applied to him." *Rupert*, 291 F.3d at 245. As there was no authority on this question within Pennsylvania case law, the Third Circuit certified that question to this Court. This Court split 3–3 on the question, thereby failing to clarify the issue for the Third Circuit. Instead, two opinions with opposite conclusions were issued.

*Rupert v. Liberty Mutual Ins. Co.*, 566 Pa. 387, 781 A.2d 132 (2001).

Upon receipt of this Court's split decision on the certified question, the Third Circuit was forced to decide the issue in order to rule on the matter before it, and found that each insured under a given policy was deemed to have sufficient notice of the UM/UIM stacking waiver by virtue of the signature of the individual who was the first named insured at the inception of the policy. *Rupert*, 291 F.3d at 247. This conclusion, according to the Third Circuit, was supported by inclusion of the word "purchasing" within Section 1738(c). *Id.* at 248. "This language further suggests that insurers' obligation to inform named insureds of their right to waiver exists only at the time that coverage is *initially* purchased." *Id.*[6,7] Beyond its lack of precedential value, we find *Rupert* inapposite because it resolved a statutory ambiguity not at issue in the instant matter.

■ The respective positions of the parties are easily summarized in the matter *sub judice*. Appellants reject the Superior Court's reliance upon *Smith*, and claim that under Section 1738, Nationwide had a duty to provide a new waiver form and secure a new waiver of stacked UM/UIM coverage.

---

6. Notably, the Third Circuit decision fails to establish any basis or cite to any authority for its conclusion that the statutory language of Section 1738, which is in the present tense, only applies to purchases that occurred in the past, i.e. at inception.

7. In dissent, Chief Judge Becker of the Third Circuit was emphatic:

   The Opinion of Mr. Justice Zappala finds that the validity of a waiver of uninsured motorists coverage is determined "at the inception of the policy." Yet this language appears nowhere in Section 1738. Moreover, under this expansive view, a rejection form signed "at the inception of the policy" indefinitely binds all future insureds, including those added long after the original first named insured is removed from the policy; these subsequent insureds are not even minimally afforded constructive knowledge of the option to reject stacked coverage. This troubling result does not follow if the insurer has obtained a rejection form from the current first named insured, whose signature would reject coverage for all those insureds currently on the policy.

   *Rupert*, 291 F.3d at 249 (Becker, C.J., dissenting).

The failure to do so, it is argued, resulted in a policy with stacked UM/UIM coverage limits by operation of the statute.

Appellants acknowledge that Mr. Sackett, in 1998, executed a valid waiver of stacked UIM coverage. However, they focus their arguments on what happened after that waiver was executed, when coverage for the Ford Windstar was purchased. On this point, the Appellants offer a straightforward argument:

> [I]f Section 1738 was designed to ensure a knowledgeable rejection, a more practical interpretation of this Section would be that the [L]egislature required the stacking rejection to be executed whenever UM/UIM coverage is actually purchased for the added vehicle. In other words by the use of the following language in Section 1738(c): "Each named insured *purchasing* uninsured or underinsured motorist coverage,"... the [L]egislature intended the waiver notice to be provided *each* time such coverage is purchased, including the time such coverage was purchased for the Sacketts' third vehicle.

(Brief of Appellants at 20) (emphasis added by Appellant).

In essence, the Appellants contend an insurer has a duty under the plain language of Section 1738 to provide a new rejection form and an opportunity to waive stacked UM/UIM coverage when a new vehicle is added to a policy. Adding a vehicle to an existing policy constitutes a purchase within the meaning of the statute and entitles insureds who select UM/UIM coverage the opportunity to waive the new sum of available stacked limits of that coverage. Only in the area of stacking is the sum of available coverage dependent on the number of vehicles on the policy. This sum, of course, is increased each time an insured purchases coverage for an additional vehicle. In contrast, if an insured decides to waive all UM/UIM coverage, as in *Smith*, the coverage limits waived at inception are not affected by a subsequent decision to purchase insurance for additional vehicles.

Appellants focus upon the fact that nothing in Section 1738 indicates that the insurer's duty to provide the opportunity to

waive stacked UM/UIM coverage occurs only at inception of the policy. Thus, they conclude, requiring the insurer to provide a new rejection form at the time insurance for an additional vehicle is purchased is the correct interpretation of the statute:

> [H]ad the [L]egislature intended to only require a stacking waiver at the inception of the policy, it easily could have said so within the confines of Section 1738, the only Section in the MVFRL which addresses stacking of UM/UIM coverages. Since the concept of stacking of UM/UIM coverages by its very nature requires multiple vehicles in one or multiple policies, it must be presumed that the [L]egislature was aware of a circumstance, such as the present case, where an insured will add another vehicle to an existing policy. In contrast, however, the [L]egislature has, in [Section 1791], provided for language which cautioned Pennsylvania insurers at the policy's inception.[8]

(Brief of Appellant at 26–27). Appellants insist that the rules of statutory construction require a court to give effect to the plain language of the Section. Here, the "sum" of the available coverage changes with the "purchasing" of new coverage, and therefore an insured is due the "opportunity" to waive that sum.

Appellee asserts that the 1998 waiver had continuing effect, there was no duty to provide a new waiver, and that no stacked UM/UIM coverage was ever in place. Additionally, Appellee insists that because the insured never paid for such coverage, and because requiring insurers to provide waiver notices and opportunities to waive under facts such as these, adoption of Appellants' argument would run afoul of the public policy goal of cost containment. Appellee argues that Section

---

**8.** Appellant references Section 1791 of the MVFRL, which addresses provision and waiver of UM/UIM *coverage,* but not *stacking* of UM/UIM coverage. That Section specifically states:

> It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice ... is given to the applicant at the time of application for the original coverage, and no other notice or rejection shall be required.

75 Pa.C.S. § 1791.

1738 does not require an insured to be provided with an opportunity to waive stacked UM/UIM coverage at any time after the **initial purchase** of the policy. Nationwide also relies upon *Rupert, Smith* and this Court's recent decision in *Craley v. State Farm Fire Cas. Co.*, 586 Pa. 484, 895 A.2d 530 (2006) for the proposition that Mr. Sackett's execution of the Section 1738(d) waiver form is evidence of the knowing waiver. Nationwide fails to provide any statutory authority or cite to any case in any court, which provides that a purchase of coverage is limited to the inception of the policy, or that its policy argument should prevail over the plain language of the statute.

We find that no prior decision by this Court addresses the narrow issue of statutory construction raised in this appeal. *Craley* presented an issue of first impression related to Section 1738, but that decision resolved an ambiguity in the statute. We found that, under the facts presented in that case, an insured with only one vehicle on a policy waived inter-policy stacking. *Craley*, 895 A.2d at 542. Although the issue in *Craley* was quite different from the matter *sub judice,* Nationwide attempts to adopt that holding as justification for its instant argument that Mr. Sackett's 1998 waiver evidenced a knowing waiver of stacked UM/UIM coverage, and that cost containment concerns are at issue. We find this unpersuasive.

█ As a practical matter, there will be *some* cost attendant to compliance with today's holding. Yet, the cost containment objectives addressed in *Craley* are not at odds or inconsistent with the instant decision.[9] *Craley*, like *Rupert*, addressed a statutory ambiguity. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). A policy objective such as cost-containment may be considered only "[w]hen the words of the statute are not explicit...." 1 Pa.C.S. § 1921(c). Here, we simply

9. For a detailed discussion of the background of the MVFRL and its cost-containment objective, see Justice Saylor's thorough discussion in *Burstein v. Prudential Prop. and Cas. Ins. Co.*, 570 Pa. 177, 188, 809 A.2d 204, 211–213 (2002) (Saylor, J., dissenting).

cannot look past the plain language of Section 1738 given that we find no lack of clarity in the statute. The plain language of Section 1738 will not yield to a policy goal, even one as laudable as the cost containment objective of the MVFRL Section.[10]

The narrow question left for this Court's resolution is whether the Sacketts' purchase of the subject underinsured motorist coverage occurred when the policy incepted, or did another purchase occur when they acquired that Ford Windstar and added it to their policy. Answering this question determines whether Nationwide had a duty under Section 1738 to provide another opportunity to waive.

The Sacketts could not have purchased underinsured motorist coverage for the Ford Windstar *prior* to its acquisition, because they would have had no insurable interest related to it. "Today, it is universally held, either by force of statute or upon public policy grounds, that insurable interest is necessary to the validity of a policy, no matter what the subject matter." Couch on Insurance 3d § 41:1 (2005). It is true that analyzing insurable interest is different as between property and accident insurance. 1 Appleman on Insurance 2d § 1.16 (2006). Yet, it is clear that the Sacketts could not purchase underinsured motorist coverage for an automobile they had not yet acquired.[11]

■ If the Sacketts did not purchase the coverage *prior* to acquiring the Ford Windstar, as Nationwide contends, then the purchase could only have occurred after they acquired the vehicle. Once the Sacketts purchased coverage for the Ford Windstar, the available *sum* of stacked limits increased. Naturally, an insured "purchasing" UM/UIM coverage could not waive the actual stacked limits available to him or her unless

10. Although cost containment considerations do not bear on the instant decision, this is not meant to indicate a departure from our recognition that spiraling automobile insurance costs are a real concern. Our decision is constrained by the rules of statutory construction.

11. "Purchase" is defined as "the act or instance of buying." Black's Law Dictionary 1270 (8th ed.1999). The words "purchase" and "purchasing" are not defined terms within the definitions provided by the MVFRL.

that waiver was made after coverage for the newly added vehicle was purchased. Stated otherwise, under the language of Section 1738 it was not possible at the inception of the policy, when the Sacketts had just two vehicles, for Mr. Sackett to waive the stacked limits for three vehicles. This is because the new sum of stacked limits became available only *after* the *purchase* of UM/UIM coverage for the Ford Windstar occurred. Prior to the addition of the Ford Windstar, the available sum of stacked UM/UIM coverage limits under the Sacketts' policy was $200,000.00. Yet, the available stacked limit increased substantially to $300,000.00 when the Sacketts purchased UM/UIM coverage for the Ford Windstar. Section 1738(c), read as a whole, makes it clear that an insurer must provide a stacking waiver each time a new vehicle is added to the policy because the amount of coverage that may be stacked increases.

Mr. Sackett was denied the opportunity to waive the increased stacked limit of UM/UIM coverage because Nationwide did not provide the required rejection form. *Thus, the insured did not waive the stacked limits of coverage.*[12] Pursuant to Section 1738(a), "[t]he limits of coverage available under this subchapter for an insured shall be the sum of the limits for each motor vehicle . . . ."

Nationwide also relies upon the finding of the Superior Court that there is no remedy available for a Section 1738 violation regardless of whether there was a duty to provide new waiver forms, because the Sacketts did not pay for stacked coverage. Nationwide misreads the statute and misconstrues prior decisions in this area.

As a matter of course, we have previously acknowledged remedial provisions in the MVFRL are a component of the overall goal of indemnifying individuals injured in motor vehicle accidents, although the MVFRL was enacted to contain spiraling insurance costs. *See Lewis v. Erie Ins. Exch.*, 568

12. *"Ordinarily,* a rejection is effective when it is signed, which is part of the application process. A major change to an *existing* policy that included UM/UIM coverage would normally require a rejection." 24 Appleman, *supra* § 147.2 (emphasis added).

Pa. 105, 120, 793 A.2d 143, 152–53 (2002). However, in Section 1738, the provision of stacked UM/UIM coverage is the default coverage limit established by the General Assembly. An insured must affirmatively waive stacked coverage in order to pay a reduced premium. Thus, it is incorrect to state there is no remedy. Rather, without the waiver, coverage is provided by the statute itself.

The only remaining matter is whether the Sacketts are entitled to the sum of the limits of coverage of all three of the vehicles. This question is driven by the need to assess the continued viability, if any, of the initial waiver of stacked UM/UIM coverage, which Mr. Sackett executed on August 5, 1998. Section 1738(a) provides that the limits of UM/UIM coverage, absent a valid waiver, "shall be the sum of the limits for each motor vehicle as to which the injured person is an insured." As explained above, the sum of stacked coverage limits available to the Sacketts, after purchasing coverage for the Ford Windstar, was $300,000.00. As set forth above, there was no valid waiver of *this* sum. Nationwide failed to inform the Sacketts of the new sum of available coverage. Therefore, the UIM coverage available under the policy is the sum of the available coverage limits of three vehicles.

Insurers already are required to provide a waiver opportunity to new insureds. Today's holding requires what the plain language of the statute states: when an existing insured purchases uninsured or underinsured motorist coverage for more than one vehicle under a policy, the named insured must be provided with the opportunity to waive stacking of that coverage. Despite what Appellee suggests, today's holding does not extend to circumstances where an existing named insured simply replaces a vehicle, or renews an existing policy. Such changes are not purchases of coverage within the meaning of Section 1738.

For the reasons set forth above, the decision of the Superior Court affirming the entry of summary judgment is reversed. The matter is remanded to the trial court. Jurisdiction is relinquished.

Former Justice NEWMAN did not participate in the decision of this case.

Chief Justice CAPPY and Justice SAYLOR and BAER join the opinion.

Justice CASTILLE files a dissenting opinion in which Justice EAKIN joins.

Justice CASTILLE, dissenting.

The Majority Opinion addresses the question of whether adding a new vehicle to an existing automobile insurance policy, where the insured had previously rejected "stacking" the uninsured/underinsured ("UM/UIM") coverage on multiple vehicles, triggers a requirement that the insurer must provide the insured with an additional and separate opportunity to reject stacking for the newly insured vehicle. The Majority concludes that the insurer is required to provide the insured with the opportunity to waive UM/UIM stacking when a new vehicle is added to an existing policy. I respectfully disagree with the Majority's imposition of this requirement, and, therefore, I dissent.

Appellants had been insured by Nationwide Mutual Insurance Company for two years when Victor Sackett suffered serious injuries in an automobile accident while riding as a passenger in an automobile that collided with another vehicle. At the inception of their policy, appellants had insured two automobiles with Nationwide and had specifically rejected stacking their UM/UIM benefits, a selection which reduced their premium payments. On July 26, 2000, appellants added a third vehicle to their existing Nationwide policy. Appellants did not request a stacking option for the new vehicle, and Nationwide did not seek or secure a new waiver of stacking at that point. Ten days later, Victor Sackett was injured in the accident that gave rise to this litigation. After collecting the policy limits on the policies insuring the two drivers involved in the accident, appellants sought underinsured motorist benefits under their Nationwide policy, asserting that they were entitled to stacked benefits because they did not reject stack-

ing when they added the third vehicle to the policy. Nationwide responded that coverage was unstacked for all three vehicles in accordance with the stacking waiver appellants had executed at the inception of the policy.

The crux of appellant's argument on appeal is that when a new vehicle is added to an existing policy, the insurer must offer a new waiver of stacking form, and the failure to do so automatically results in the insurer being deemed liable for stacked benefits. Nationwide counters that there is nothing in the language of the Motor Vehicle Financial Responsibility Law ("MVFRL") that requires the execution of a new waiver when a new vehicle is added to an existing policy, and that the waiver appellants executed at the inception of the policy applies, resulting in unstacked benefits. I agree with Nationwide that the statute does not require a new waiver, and this Court should not interpose such a requirement.

Section 1738 of the MVFRL governs stacking and waiver of UM/UIM benefits and establishes the procedure for waiver:

(a) **Limit for each vehicle.**—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

(b) **Waiver.**—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

(c) **More than one vehicle.**—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b).

The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

75 Pa.C.S. § 1738(a)-(c). Nothing in the statutory language explicitly addresses the factual scenario presented here—*i.e.,* the statute does not state that when an insured adds an additional vehicle to an existing policy, new waivers must be executed. Nevertheless, the Majority today reads such a requirement into Section 1738(c) by concluding that the addition of the third vehicle to appellants' existing multi-vehicle policy constituted an entirely new purchase of insurance, reasoning that appellants could not have purchased insurance for the third vehicle prior to acquiring that vehicle. It follows, according to the Majority, that appellants could not have waived stacked benefits relative to the third vehicle at a time when they only owned two vehicles. Because Nationwide failed to provide appellants with an opportunity to waive stacking when they added the third vehicle, the Majority finds that appellants did not waive stacking for the third vehicle.

In my view, the Majority's conclusion is unsupported by other sections of the MVFRL, the policies underpinning the MVFRL, and prior decisions of this Court. Section 1791 specifically addresses when an insured must be provided with notice of available coverages and benefits:

It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant **at the time of application for original coverage, and no other notice or rejection shall be required** . . . .

75 Pa.C.S. § 1791 (emphasis supplied). The Majority dismisses the clear language of this Section as irrelevant because the Section does not explicitly discuss the effect of adding a vehicle on an existing waiver of stacking. Such a facile dismissal of clear legislative intent is, in my opinion, unwarranted.

The legislative branch is not obliged to list all possible, specific applications of a general statutory provision or principle. Section 1791 is an unambiguous expression of the General Assembly's intention that insurers need only provide insureds with notices **or rejections** relative to their coverage at the inception of the policy. Section 1791 obviously was intended to ease the burden on insurers by expressly not requiring them to provide new notices or rejections on every occasion when an insured makes some change to existing coverage. Insured motorists typically make many changes in their insurance policies during the lifetime of a given policy: substituting a new vehicle for an insured vehicle; adding an additional vehicle, deleting a vehicle, adding or deleting insured family members; increasing or decreasing coverages or deductibles. In very plain language, Section 1791 directs that an insurer is not required to provide new notices or rejections whenever such an event occurs. Although Nationwide could have sought new rejections of coverage when appellants added the third vehicle to their policy, nothing in the statute obliged them to do so. The failure of the General Assembly to require such administrative redundancy makes logical sense as appellants did not purchase a new policy, but simply added a vehicle to an existing policy. The same policy appellants purchased in 1998 remained in effect, and the original waiver of stacking was part of that policy.

This Court has long recognized the cost containment policy underlying the MVFRL. *See Pennsylvania Nat'l Mut. Cas. Co. v. Black,* 916 A.2d 569 (Pa.2007); *Craley v. State Farm Fire and Cas. Co.,* 586 Pa. 484, 895 A.2d 530 (2006); *Burstein v. Prudential Prop. and Cas. Ins. Co.,* 570 Pa. 177, 809 A.2d 204 (2002); *Lewis v. Erie Ins. Exch.,* 568 Pa. 105, 793 A.2d 143 (2002). *See also* Senate Journal, Oct. 4, 1983, 1142–53; House Journal, Dec. 13, 1983, 2139–59. In this instance, the Majority's decision thwarts this policy in two ways. First, requiring insurers to provide new rejections when an insured makes a policy change imposes a burden on insurers that could, and likely will, result in costs of compliance being passed on to insureds. Second, the Majority awards appellants a benefit

for which they did not pay premiums. The costs to insurers of providing benefits to insureds for which premiums were not paid will certainly increase premiums for other insureds. Therefore, the Majority's decision is contrary to the policies underlying the MVFRL.

Finally, this Court has also consistently held that an insured is not entitled to benefits for which he has not paid premiums:

[T]he public policy of cost-containment "functions to protect insureds against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure," and prevents insureds from "receiving gratis coverage." *Burstein*, 809 A.2d at 208. Thus, insurers are not "compelled to subsidize unknown and uncompensated risks by increasing insurance rates comprehensively." *Id.; see Eichelman [v. Nationwide Ins. Co.*, 551 Pa. 558, 711 A.2d 1006, 1010 (1998)] (acknowledging the significance of the "correlation between premiums paid by the insured and the coverage a claimant should reasonably expect to receive"); *[Prudential Prop. and Cas. Ins. Co. v.] Colbert*, [813 A.2d 747, 760 (2002)] (Castille, J., dissenting) ("The overriding concern powering the decisions in *Burstein; Eichelman* and the other earlier cases is to ensure that both the insurer and insured receive the benefit of what is statutorily required and contractually agreed-upon (consistently with statutory requirements) and nothing more.").

*Craley*, 895 A.2d at 542. Here, appellants specifically waived stacking of UM/UIM benefits at the inception of their policy, with a resultant decrease in premiums. The change in the policy was at appellants' request, not a solicitation from Nationwide, and appellants indicated no interest in purchasing new stacking coverage and the additional premium that coverage would entail. The end result of the Majority's decision is that, despite the explicit initial waiver and concomitant reduced premiums appellants enjoyed, appellants nevertheless will secure the windfall of stacked benefits, benefits for which they never paid premiums.

I respectfully dissent.

Justice EAKIN joins this dissenting opinion.