J-A08001-20

2020 PA Super 181

| | | |
|---|---|---|
| ROBERT FRANKS AND KELLY A. FRANKS, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | : | No. 2784 EDA 2019 |

Appeal from the Judgment Entered September 4, 2019
In the Court of Common Pleas of Bucks County Civil Division at No(s):
No. 2018-03954

BEFORE:  LAZARUS, J., KUNSELMAN, J., and McCAFFERY, J.

OPINION BY McCAFFERY, J.:                    **FILED JULY 31, 2020**

Robert and Kelly A. Franks (Appellants) appeal from the declaratory judgment entered in the Bucks County Court of Common Pleas, granting relief in favor of State Farm Mutual Automobile Insurance Company (State Farm). Appellants contend the trial court erred when it determined State Farm was not required to obtain a new stacking waiver of underinsured motorist (UIM) coverage when Appellants removed a vehicle from their existing policy. Because we conclude the removal of a vehicle from a multi-vehicle policy changes the stacked amount of UIM coverage, we agree a new stacking waiver was required under Section 1738(c) of the Motor Vehicle Financial

Responsibility Law (MVFRL).[1] Thus, we reverse the declaratory judgment in favor of State Farm and remand for further proceedings.

The parties stipulated to the following facts underlying this action:

On January 18, 2013, [Appellants] applied for automobile coverage with State Farm for two vehicles, a 2002 Nissan Xterra and a 1999 Ford Taurus. In connection with their application for coverage, Robert Franks, the first named insured under the policy, executed a form rejecting stacked underinsured motorist coverage that fully complied with the form prescribed by § 1738(d)(2) of the [MVFRL]. Consistent with [Appellants'] application for insurance . . . and the rejection of stacked underinsured motorist coverage, State Farm issued the policy, effective February 3, 2013 with non-stacked underinsured motorist coverage limits of $100,000 per person/$300,000 per accident.

Effective January 22, 2014, at the request of [Appellants], a third vehicle, a 2012 Nissan Altima, was added to the policy. Upon adding the third vehicle, [Appellants] executed a second rejection of stacked limits of underinsured motorist coverage. Subsequently effective July 23, 2014, at the request of [Appellants], the 1999 Ford Taurus was deleted from the policy, reducing the total number of vehicles insured under the [ ] policy from three (3) to two (2). When the 1999 Ford Taurus was deleted from the policy, [Appellants] did not request and State Farm did not make any changes to the coverages for the 2002 Nissan Xterra and 2012 Nissan Altima which continued to be insured under the policy.

The deletion of the 1999 Ford Taurus from the policy resulted in a credit being applied to [Appellants'] State Farm Payment Plan in the amount of $15.06 (for the 11 days of unused premium on the 1999 Ford Taurus). The deletion of the 1999 Ford Taurus did not change any of the coverages on the 2002 Nissan Xterra and 2012 Nissan Altima that continued to be insured under the policy or the premiums charged for the coverages on the two (2) remaining vehicles. From the time that the 1999 Ford Taurus was deleted from the policy effective July 23, 2014 through the

---

[1] **See** 75 Pa.C.S. §§ 1701-1799.

time of the August 11, 2016 accident, the total premium that State Farm charged and [Appellants] paid for the policy was approximately $250.00 lower every six months that it had been when there were three vehicles insured under the policy.

On or about March 26, 2015, [Appellants] replaced the 2002 Nissan Xterra on the policy with a 2013 Nissan Frontier, the vehicle which was involved in [an] accident [on August 11, 2016]. From July 2014 though the time of the August 11, 2016 accident, the policy continuously insured two vehicles, and the declarations page of the policy provided non-stacked underinsured motorist coverage.

After the number of vehicles insured under the policy was reduced from three (3) to two (2), [Appellants] were never provided with and did not sign another form rejecting stacked underinsured motorist coverage. From the time of the inception of the policy on February 3, 2013, though the time of the August 11, 2016 accident, [Appellants] were not charged a premium for stacked underinsured motorist coverage. [Appellants] were charged and paid a lower premium for non-stacked underinsured motorist coverage than they would have been charged by State Farm for stacked underinsured motorist coverage.

On August 11, 2016, Robert Franks sustained injuries in a motor vehicle accident that was caused by the negligence of the driver (hereinafter "the tortfeaser") of the other vehicle involved in the accident. After ascertaining that the bodily injury liability coverage available to the tortfeaser was insufficient to fully compensate them for the injuries and damages that they sustained as a result of the accident, [Appellants] asserted a claim for underinsured motorist benefits under the policy. In response to the claim, State' Farm paid [Appellants] underinsured motorist benefits in the amount of $100,000.

State Farm believes that the $100,000 paid to [Appellants] represents the limit of underinsured motorist coverage afforded by, and available to, [Appellants] under the policy for their claim for underinsured motorist benefits arising from the August 11, 2016 accident. [Appellants] believe that State Farm is obligated to afford them a total of $200,000 underinsured motorist coverage for their claim arising from the August 11, 2016 accident.

Trial Ct. Op. 11/18/19, at 1-3.

On July 9, 2018, Appellants filed a civil action seeking a declaratory judgment that they are entitled to stacked UIM coverage in the amount of $200,000 under their State Farm policy. Appellant's Complaint, 7/9/18, at ¶ 29. State Farm filed an answer with new matter and counterclaim, seeking a declaratory judgment that its payment of $100,000 to Appellants exhausted the UIM coverage under their policy. *See* State Farm's Answer with New Matter & Counterclaim for Declaratory Judgment, 8/14/28, at 10. Thereafter, the parties filed cross motions for summary judgment, which the trial court denied.

On August 27, 2019, the parties appeared before the court for a non-jury trial and agreed to proceed on stipulated facts, as the question in dispute was "essentially . . . a legal issue." N.T., 8/27/19, at 3. On August 30, 2019,[2] the trial court entered a judgment in favor of State Farm and against Appellants, "declaring that State Farm . . . does not owe [Appellants] more than the $100,000.00 already paid under the [UIM] benefits portion of the policy of insurance issued to [Appellants]" Order, 8/30/19. This timely appeal followed.[3]

Appellants raise one issue on appeal:

Did the trial court err in granting declaratory judgment relief to [State Farm] and finding that [State Farm] was **not** required to

---

[2] The order was docketed and sent to the parties on September 4, 2019.

[3] Appellants filed a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal the same day as their notice of appeal.

obtain a new stacking waiver pursuant to 75 Pa.C.S.A. § 1738(c) and that consequently [Appellants] are **not** entitled to a total of $200,000 in underinsured motorist coverage?

Appellant's Brief at 4 (some capitalization omitted).

Because the sole issue raised on appeal concerns an interpretation of a provision of the MVFRL, our scope of review is plenary and our standard of view is *de novo*. ***Barnard v. Travelers Home and Marine Ins. Co.***, 216 A.3d 1045, 1050 (Pa. 2019).

It is well-settled that "the MVFRL should be construed liberally in favor of the insured." ***Progressive Halcyon Ins. Co. v. Kennedy***, 908 A.2d 911, 916 (Pa. Super. 2006).

> One of the objects of the MVFRL to be effected by this liberal construction is affording the injured claimant the greatest possible coverage. We must remain mindful that in close or doubtful cases, we must interpret the intent of the legislature and the language of insurance policies to favor coverage for the insured.

***Jones v. Unitrin Auto & Home Ins. Co.***, 40 A.3d 125, 127 (Pa. Super. 2012) (citation omitted). ***See AAA Mid-Atl. Ins. Co. v. Ryan***, 84 A.3d 626, 633 (Pa. 2014) ("[T]he 'clearly expressed' public policy underlying the MVFRL is protecting 'those injured by a [negligent driver] who lacks adequate coverage[.]'").

Furthermore, when considering the application of a statute, we must bear in mind that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a).

> "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of

- 5 -

pursuing its spirit." [1 Pa.C.S.] § 1921(b). Words and phrases within a statute must be "construed according to rules of grammar and according to their common and approved usage," *id.* § 1903(a), and must be read within the context of the remaining statutory language. It is only when the plain language of a statute is ambiguous that courts may resort to other tools of statutory construction in order to ascertain the General Assembly's intent. *See* 1 Pa.C.S. § 1921(c).

*Barnard*, 216 A.3d at 1051 (some citations omitted).

At issue in the present case is Section 1738 of the MVFRL, which governs the stacking of both uninsured motorist (UM) and UIM benefits, as well as an insured's option to waive such coverage. The statute provides, in relevant part:

**(a) Limit for each vehicle.**—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

**(b) Waiver.**—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

**(c) More than one vehicle.**—Each named insured **purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage** and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

75 Pa.C.S. § 1738(a)-(c) (emphasis added).

The dispute herein involves an interpretation of Section 1738(c), specifically, whether an insurance company is required to provide a new waiver for stacked UIM benefits when an insured **removes** a vehicle from an existing policy. The trial court found that "removing a vehicle from an already existing policy should not trigger the requirement to execute a new waiver for stacking insurance" because the removal of a vehicle does not constitute a "purchase" of insurance under subsection (c). Trial Ct. Op. at 4, 6. Appellants contend, however, that their removal of a third vehicle "constituted a 'purchase' of a new policy, one that now covered a different number of vehicles and required payment of a different premium." Appellants' Brief at 18. Thus, they insist "a new waiver of stacking was required." *Id.* at 20. We agree.

The issue before us is one of first impression. Under present case law, it is clear the **addition** of a vehicle to an existing multi-vehicle policy requires the insurer to provide the insured with a new stacking rejection form. *See* *Sackett v. Nationwide Mut. Ins. Co.*, 919 A.2d 194 (Pa. 2007) (*Sackett I*). In *Sackett I*, the Pennsylvania Supreme Court held that the addition of a new vehicle to an existing policy constitutes a "purchase" of new coverage under the plain language of Section 1738(c). *Id.* at 196-97. The Court explained:

> [U]nder the language of Section 1738 it was not possible at the inception of the policy, when the [insured] had just two vehicles, for [the insured] to waive the stacked limits for three vehicles. This is because the new sum of stacked limits became available only **after** the **purchase** of UM/UIM coverage for the [new vehicle] occurred. Prior to the addition of the [new vehicle], the available sum of stacked UM/UIM coverage limits under the

- 7 -

[insured's] policy was $200,000.00. Yet, the available stacked limit increased substantially to $300,000.00 when the [insured] purchased UM/UIM coverage for the [new vehicle]. Section 1738(c), read as a whole, makes it clear that an insurer must provide a stacking waiver each time a new vehicle is added to the policy because the amount of coverage that may be stacked increases.

*Id.* at 202. Thus, the Court determined the amount of "UIM coverage available under the policy [was] the sum of the available coverage limits of three vehicles."[4] *Id.* at 203.

Furthermore, this Court has held that when a policy includes a non-finite after-acquired vehicle clause, the **replacement** of one vehicle with another on an existing multi-vehicle policy does **not** require a new stacking waiver. ***Shipp v. Phoenix Ins. Co.***, 51 A.3d 219, 223-24 (Pa. Super. 2012). The

---

[4] The Pennsylvania Supreme Court subsequently granted reargument in ***Sackett I*** to consider the impact of its holding on after-acquired vehicle clauses. The Court modified its holding in ***Sackett I*** as follows:

> We hold that the **extension of coverage under an after-acquired-vehicle provision** to a vehicle added to a pre-existing multi-vehicle policy is not a new purchase of coverage for purposes of Section 1738(c), and thus, does not trigger an obligation on the part of the insurer to obtain new or supplemental UM/UIM stacking waivers. However, where coverage under an after-acquired-vehicle clause is expressly made finite by the terms of the policy, ***Sackett I*** controls and requires the execution of a new UM/UIM stacking waiver upon the expiration of the automatic coverage in order for the unstacked coverage option to continue in effect subsequent to such expiration.

***Sackett v. Nationwide Mut. Ins. Co.***, 940 A.2d 329, 334 (Pa. 2007) (***Sackett II***) (citations and footnotes omitted; emphases added). The Court expressly stated: "The opinion in ***Sackett I*** . . . is modified by the above, albeit that we reaffirm the result." *Id.*

- 8 -

*Shipp* Court explained that, although the insured added collision coverage for

a replacement vehicle, the UM/UIM coverage remained the same:

> **The matter of importance in all of these cases, as well as in section 1738, pertains only to the UM/UIM policy coverage, whether it has changed, and whether a new waiver of stacked coverage is required.** At all times, both before and after the acquisition of the [the replacement vehicle], the UM/UIM coverage limits of the . . . policy remained at $200,000 stacked, $100,000 unstacked. We find the addition of collision coverage to be irrelevant to the issue of stacking under section 1738.
>
> . . . In the case of a replacement vehicle, there is no change whatsoever in the amount of UM/UIM coverage. The only change is in the identity of the covered vehicle. Indeed, both before and after the purchase of the [replacement vehicle], the UM/UIM coverage available to the [insureds] remained at all times $200,000 stacked, $100,000 unstacked. Since no new insurance coverage was purchased under such circumstances, [the insurer] would not need to re-obtain waiver of stacked coverage from the [insured].

*Id.* at 224 (emphasis added).

As noted *supra*, however, neither this Court nor the Supreme Court has

considered whether the **removal** of a vehicle from a multi-vehicle policy

requires a new stacking waiver.[5] In concluding that it does not, the trial court

_____

[5] State Farm asserts that this Court's decision in *Pergolese v. Standard Fire Ins. Co.*, 162 A.3d 481 (Pa. Super. 2017), "supports [its] position that deleting a vehicle from a policy does not constitute the purchase of underinsured motorist coverage." State Farm's Brief at 18. We disagree. In that case, like here, the insureds removed a vehicle from their policy. *Pergolese*, 162 A.3d at 490. Forty-four days later, however, the insureds added a new vehicle to the same policy. *Id.* They asserted that the new vehicle was a **replacement** vehicle like the one in *Shipp*. However, a panel of this Court disagreed, concluding that the addition of the new vehicle necessitated a new stacking waiver. *Id.* at 490-91.

found guidance in the Pennsylvania Supreme Court's recent decision in *Barnard*. *See* Trial Ct. Op. at 5-6. In that case, the Court considered the following certified question of law, on remand from the Third Circuit Court of Appeals:

> If an insured under a policy of insurance subject to the [MVFRL] has waived stacking but later secures an increase in the limit of her UIM coverage on her existing policy, must her insurance carrier obtain a separate waiver of her right to stack the coverage or does a prior waiver of the right to stack the coverage remain in effect?

*Barnard*, 216 A.3d at 1049. Relying upon the definition of the term "purchase" as it is used in Section 1738(c), the *Barnard* Court held the insurer must obtain a new stacking waiver when an insured increases UIM coverage in an existing policy. *Id.* at 1051-52. The Court opined:

> We emphasize that, in ordinary usage, the term "purchase" requires two things: (1) the acquisition of something; and (2) payment. Paying an increased premium satisfies the second requirement, but, in order to satisfy the first, the insured must obtain something that she does not already possess. Specifically, in the context of Subsection 1738(c), an insured must obtain UIM coverage. An insured paying for an increased UIM coverage limit undoubtedly acquires more UIM coverage than she initially had.

*Id.* at 1053.

---

State Farm notes that "[c]onspicuously absent from the opinion of the court in *Pergolese* is any suggestion that [the insurer was also] required to . . . obtain[] a new stacking waiver forty-four days earlier when the original fourth vehicle had been removed from the policy." State Farm's Brief at 18. Contrary to State Farm's implication, we read nothing into the Court's silence on the issue of whether a new waiver was required when a vehicle was removed from the policy because that issue was not before the Court.

Relying on this line of cases, the trial court found that Appellants' removal of a vehicle did not constitute a "purchase" under Section 1738(c). Trial Ct. Op. at 6. The court opined:

> Unlike the insured in ***Sackett I***, who added a third vehicle to the policy, here, [Appellants] removed a car from their policy and decreased the coverage from three (3) to two (2) cars. The reasoning that every court before us had used in rendering their decisions is that policy premiums or vehicles covered **increased**. That is not the case here. [Appellants] received a credit of $15.06, and then continued to pay lower premiums for only covering two non-stacked vehicles. **If anything, this constitutes a modification or return, but not a purchase**.
>
> Therefore, removing a vehicle from an already existing policy should not trigger the requirement to execute a new waiver for stacked insurance.

***Id.*** (some emphasis added).

We conclude the trial court's view is too narrow. In determining whether a new stacking waiver is required, the critical question is whether there is a **change** in the potential amount of stacked coverage. When a new vehicle was added in ***Sackett I***, the Supreme Court concluded a new waiver of the increased stacked coverage was required. ***Sackett I***, 919 A.2d at 202. Similarly, in ***Barnard***, the Court held a new waiver was required when the insured increased their UIM coverage on vehicles they already possessed, noting the insurer "was required to offer [the insured] the opportunity to waive stacking of the **new, aggregate amount** of UIM coverage at that time." ***Barnard***, 216 A.3d at 1054 (emphasis added). Notably, however, in ***Shipp***, this Court determined a new waiver was **not** required when the insured replaced one vehicle with another, despite the fact the insured added collision

- 11 -

coverage on the replacement vehicle which increased the cost of the policy. **Shipp**, 51 A.3d at 224. The **Shipp** Court explained, "[i]n the case of a replacement vehicle, there is no change whatsoever in the amount of UM/UIM coverage. The only change is in the identity of the covered vehicle." **Id.**

Thus, we hold Section 1738(c) requires a new stacking waiver whenever the stacked amount of UIM coverage **changes** — regardless of whether the change is an increase or decrease in the amount of stacked coverage. This interpretation complies with our stated policy of construing the statute "liberally in favor of the insured"[6] so as to "afford[ ] the injured claimant the greatest possible coverage." **See Jones**, 40 A.3d at 127. Accordingly, in the present case, Appellants are entitled to stacked UIM coverage in the amount of $200,000. Consequently, we reverse the declaratory judgment entered in favor of State Farm, and remand for the entry of judgment in favor of Appellants.

Judgment reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Kunselman joins this opinion.

Judge Lazarus files a Dissenting Statement.

---

[6] **Progressive Halcyon Ins. Co.**, 908 A.2d at 916.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/31/20