J-A08001-20

2020 PA Super 181

| ROBERT FRANKS AND KELLY A. FRANKS, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| v. | : | |
| | : | No. 2784 EDA 2019 |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | : | |

Appeal from the Judgment Entered September 4, 2019
In the Court of Common Pleas of Bucks County Civil Division at No(s):
No. 2018-03954

BEFORE:  LAZARUS, J., KUNSELMAN, J., and McCAFFERY, J.

DISSENTING STATEMENT BY LAZARUS, J.:          **FILED JULY 31, 2020**

I respectfully dissent.

As the Majority correctly notes, the Statutory Construction Act requires that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A § 1921(b).  Moreover, words and phrases within a statute must be "construed according to rules of grammar and according to their common and approved usage," *id.* at § 1903(a), and must be read within the context of the remaining statutory language.  **Commonwealth v. Office of Open Records**, 103 A.3d 1276, 1285 (Pa. 2014).  Only when the plain language of a statute is ambiguous may courts resort to other tools of statutory construction in order to ascertain the General Assembly's intent.  **See** 1 Pa.C.S.A. § 1921(c).

Here, the language of section 1738(c) is clear and unambiguous. The opportunity to waive the stacked limits of coverage must be provided when an insured "*purchas[es]* uninsured or underinsured motorist coverage for more than one vehicle under a policy[.]" 75 Pa.C.S.A. § 1738(c) (emphasis added). I do not believe the Frankses' removal of a vehicle from their auto insurance policy constitutes a "purchase" as contemplated by the statute. In **Barnard v. Travelers Home and Marine Ins. Co.**, 216 A.3d 1045 (Pa. 2019), the United States Court of Appeals for the Third Circuit presented our Supreme Court with a certified question of law as to whether an increase in the limits of UIM coverage on a multi-vehicle policy constitutes a "purchase" under section 1738(c), thus requiring an insurer to obtain a new waiver of stacking rights. The Court concluded that it does. In considering the issue, the Court focused its attention on the common and approved usages of the word "purchase." The Court looked first to Black's Law Dictionary, which defines the term as "[t]he act or an instance of buying." **Id.** at 1051, quoting Black's Law Dictionary (11th ed. 2019). The Court then observed that, "[i]n common usage, 'to buy' means to acquire or obtain something from paying for it." **Id.** Accordingly, the Court concluded that "the term 'purchase' requires two things: (1) the acquisition of something; and (2) payment. . . . *In order to satisfy the first, the insured must obtain something that she does not already possess*." **Id.** at 1053 (emphasis added).

Applying this rationale to the instant matter, it is clear that the Frankses did not effectuate a "purchase" of coverage within the plain meaning of the

language used in section 1738(c). When the Frankses deleted the 1999 Ford Taurus from their policy, they did not "obtain something" that they did not "already possess." *Id.* To the contrary, they eliminated a portion of their existing coverage. Nor did the Frankses make a payment of any sort. *See id.* at 1051 (to purchase is to acquire or obtain something from paying for it). To the contrary, they received a credit from State Farm in the amount of $15.06, and their annual premiums were reduced by a total of $500.00. Accordingly, applying the definition of the word "purchase" as set forth in *Barnard*, it is clear that the deletion of a vehicle from a policy does not result in a "purchase" as contemplated by section 1738(c).

The Majority's reliance on *Shipp v. Phoenix Ins. Co.*, 51 A.3d 219 (Pa. Super. 2012), for the proposition that a new stacking waiver is required whenever there is *any change* in the potential amount of stacked coverage is misplaced. In *Shipp*, we held that a new waiver of stacked coverage was not required when an insured replaced one vehicle on his policy with another vehicle, since the insured's UM/UIM coverage remained the same. The Court reviewed *Sackett v. Nationwide Mut. Ins. Co.*, 919 A.2d 194 (Pa. 2007) ("*Sackett I*") (addition of new vehicle to existing policy constitutes purchase of new coverage under section 1738), *Sackett v. Nationwide Mut. Ins. Co.*, 940 A.2d 329 (Pa. 2007) ("*Sackett II*") (extension of coverage under after-acquired-vehicle provision to vehicle added to pre-existing multi-vehicle policy is not new purchase of coverage under section 1738), and *Smith v. The Hartford Ins. Co.*, 849 A.2d 277 (Pa. Super. 2004) (increase in unrelated

- 3 -

liability limits does not require new waiver of UM/UIM benefits), and concluded that "the matter of importance in all of [those] cases, as well as in section 1738, pertains only to the UM/UIM policy coverage, *whether it has changed*, and whether a new waiver of stacked coverage is required." **Shipp**, 51 A.3d at 224 (emphasis added). The Majority reads into the emphasized language an import that I do not believe the **Shipp** Court intended to convey. In **Shipp**, the Court was not confronted with a situation—as here—in which stacked UM/UIM coverage *decreased*. Thus, to the extent that the foregoing language may be read to suggest that *any* change in stacked coverage—either an increase or decrease—requires a new stacking waiver, it is merely *dicta* and not controlling here. Indeed, had the legislature intended to require a new waiver every time a named insured changes uninsured or underinsured motorist coverage for more than one vehicle under a policy, it could have simply replaced the word "purchasing" with "changing" in section 1738(c). It did not do so.

In sum, in removing a vehicle from their policy, the Frankses did not make a "purchase" of coverage as contemplated by the plain language of section 1738(c). Accordingly, I would affirm the decision of the trial court.