J-A32006-15

2016 PA Super 69

| CHRISTOPHER TONER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| THE TRAVELERS HOME AND MARINE INSURANCE COMPANY | |
| Appellee | No. 53 WDA 2015 |

Appeal from the Order December 12, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 12-20308

BEFORE:  SHOGAN, J., OTT, J., and STABILE, J.

OPINION BY OTT, J.:                    **FILED MARCH 21, 2016**

Christopher Toner appeals from the order entered in the Court of Common Pleas of Allegheny County, on December 12, 2014, denying his motion for summary judgment and granting The Travelers Home and Marine Insurance Company's (The Travelers) motion for summary judgment.  In the underlying declaratory judgment action Toner sought a judicial determination whether The Travelers was required to provide Toner's mother with a new waiver of stacking of uninsured/underinsured benefits (UM/UIM) form after she added vehicles to her automobile insurance policy.  The trial court determined The Travelers was not required to provide the form and Toner has filed this timely appeal.  After a thorough review of the submissions of the parties, relevant law, and the certified record, we affirm.

Before we address the merits of this matter, we recite out standards of review.

> Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary. We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

*Silvagni v. Shorr*, 113 A.3d 810, 812 (Pa. Super. 2015) (citation omitted).

Our standard of review in a declaratory judgment action is substantially similar.

> Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law. We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence.

*Erie Ins. Group v. Catania*, 95 A.3d 320, 322 (Pa. Super. 2014) (citation omitted).

"Additionally, we note that interpretation of an insurance policy presents a pure question of law, over which our standard of review is *de novo*." *Rourke v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 116 A.3d 87, 91 (Pa. Super. 2015) (citation omitted).

We adopt the underlying facts and circumstances of this matter as related by the trial court in its Pa.R.A.P. 1925(a) opinion, dated 2/9/2015.

> The parties filed a Joint Statement of Stipulated Facts. Attached thereto, as Exhibit A, is the insurance policy at issue. I adopt

Stipulated Facts Nos. 2-16, 18-20, 22, 23 and 25.[1] Toner was listed as a driver on a policy owned by his mother ("insured"). The original policy covered only one vehicle. Insured waived stacking, but subsequently added two additional vehicles, one at a time. On neither occasion was she provided a new waiver form. Toner was severely injured in an accident while he was the passenger of an underinsured motorist. Travelers paid Toner UIM benefits in the maximum amount for one vehicle. Toner filed this Declaratory Judgment action contending insured should have been given new waiver forms and that Traveler's [sic] failure to do so should result in the UIM benefits for each vehicle being stacked.

It is uncontested two additional vehicles were added and each time a vehicle was added insured received new "AUTOMOBILE POLICY DECLARATIONS" pages. Both sets of new declaration pages state, under paragraph 2, that "…Vehicle had been added, coverage and vehicle/driver information have been changed. These declarations replace all prior automobile policy declarations on the date on which this change is effective." Paragraph 4, "Coverages, Limits of Liability and Premiums," clearly states the UM/UIM coverage was non-stacked and referred to Endorsement A37021, which is the seven page section of the insured's policy addressing Uninsured/Underinsured Motorist Coverage, both Stacked and Non-Stacked.

The after-acquired vehicle clause defines "Your covered auto" as a vehicle acquired during the policy period which insured asks Travelers to cover within thirty days after insured becomes the owner. The issue before me was whether Travelers was required to give insured a new waiver form (relating to stacking UM/UIM benefits) when she added the vehicles to her policy.

Trial Court Opinion, 2/9/2015, at 1-2.

---

[1] The omitted numbers, 1, 17, 21 and 24, are not relevant to the disposition of this matter.

Ultimately, relying largely on the **Sackett** trilogy[2] of cases, which will be discussed, below, the trial court determined that The Travelers was not required to provide Toner with a new waiver of stacking form when she added cars to her single vehicle policy. The **Sackett** cases recognize that in general, the addition of a vehicle to an existing automobile insurance policy does not represent the purchase of new insurance, and so does not require the insurer to provide the insured with new UM/UIM stacking waiver forms. However, the courts must also look to the language of the "after acquired vehicle" clause to determine if that clause is finite in scope. If the clause is finite, the insurer will be required to provide the insured new UM/UIM waiver forms.

Toner argues the trial court erred in conducting a **Sackett** analysis and presents a straightforward, and in many ways inviting, argument based largely on the statutory language found in 75 Pa.C.S. § 1738. Toner points out that Section 1738 states:

> (a) Limit for each vehicle.--**When more than one vehicle is insured** under one or more policies **providing uninsured or underinsured motorist coverage**, the stated limit for uninsured or underinsured coverage

---

[2] The three cases are **Sackett v. Nationwide** (**Sackett I**), 919 A.2d 194 (Pa. 2007); **Sackett v. Nationwide** (**Sackett II**), 940 A.2d 329 (Pa. 2007); and **Sackett v. Nationwide** (**Sackett III**), 4 A.3d 637 (Pa. Super. 2010). Although these are often referred to as the **Sackett** trilogy, there are, in fact, four appellate cases. **Sackett I** reversed a Superior Court decision at **Sackett v. Nationwide**, 880 A.2d 1243 (Pa. Super. 2005). This initial decision is not considered part of the trilogy because it was reversed.

shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

(b) Waiver.-- Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

(c) More than one vehicle.--**Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage** and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

[75 Pa.C.S. § 1738 (a)-(c) (emphasis by Toner).]

The statute makes it perfectly clear and it can only be read one way:

(a) Whenever an insured **purchases a multi-vehicle policy, which provides UM/UIM coverage**, she automatically gets UM/UIM stacking;

(b) Subsection (a) notwithstanding, the insured can choose to waive UM/UIM stacking; and

(c) Insurer must provide said insured with the opportunity to waive UM/UIM stacking. If the insured chooses to sign the waiver of stacking, the insurer must reduce the insured's UM/UIM premiums.

Toner's Brief at 12-13 (emphasis in original).

Despite Toner's assertion there is only one way to interpret the statute, Toner's interpretation was largely rejected by our Supreme Court in

2006, in *Craley v. State Farm Fire and Cas. Co.*, 895 A.2d 530 (Pa. 2006). Toner's interpretation is based upon the belief that waiver of UM/UIM stacking is only effective in multi-vehicle policies. This interpretation was espoused in earlier case law such as *State Farm Mutual Auto. Ins. Com. v. Rizzo*, 835 A.2d 359 (Pa. Super. 2003); *Nationwide Mutual Ins. Co. v. Harris*, 826 A.2d 880 (Pa. Super. 2003); and *In re Insurance Stacking Litigation*, 754 A.2d 702 (Pa. Super. 2000). *Craley*, however, abrogated that line of statutory interpretation.[3] While we recognize that the *Craley* decision did not directly address the instant issue of when an insurer must provide UM/UIM stacking waivers, we cannot ignore the fact that our Supreme Court has widened the scope of Section 1738 to include single-vehicle insurance policies. Accordingly, we cannot accept Toner's interpretation that Section 1738, regarding providing insureds with stacking waivers, only applies to multi-vehicle policies.

Our interpretation of Section 1738 is supported by *dicta* in *Craley*, which states:

> Moreover, the Commission addressed a booklet issued by the Department and codified at 31 Pa.Code § 68.604, which some litigants read as evidence of the Department's policy to limit waiver to multiple-vehicle policies. Contrarily, the Commissioner found the booklet did not limit waiver under subsection (b) to

---

[3] "Accordingly, we refuse to construe the interplay between subsections (b), (c), and (d) to ban the waiver of stacking in single-vehicle policies and thus inter-policy stacking." *Craley*, 895 A.2d at 540.

individual policies addressing two or more vehicles, but rather merely addressed the application of the waiver form as related to subsection (c) and (d). **The Commissioner suggested that the Department would "evaluate whether to issue a pre-approved waiver form for single-vehicle policies in addition to the present Department practice of approving forms and rates of each insurer."** *Id.* at 14 n. 9. Thus, the Commissioner concluded, "Section 1738 permits single vehicle policy stacking and requires that insureds have the opportunity to waive this coverage. Rates commensurate with the risks assumed have been approved by the Department." *Id.* at 15.

*Craley*, 895 A.2d at 537-38 (emphasis added).

31 Pa.Code § 68.604 is currently reserved; the Insurance Commissioner's booklet is no longer to be found there. We are unaware of any amendment to the forms that specifically addresses waiver of UM/UIM stacking for a single-vehicle policy. This fact supports our determination that single and multi-vehicle policy stacking waivers are properly addressed by the same form and in the same manner.

Based on the above analysis, we reject Toner's interpretation of the statutory requirements of Section 1738.

We now examine the trial court's application of **Sackett**. **Sackett** involved the addition of a vehicle to an existing multi-vehicle policy, not a single-vehicle policy. As demonstrated above, however, we believe case law requires us to examine the issue similarly.

**Sackett II**[4] is the most relevant of the **Sackett** cases. This decision was issued following reargument, at which the Insurance Commission

---

[4] **Sackett v. Nationwide**, 940 A.2d 329 (Pa. 2007).

presented argument that the addition of a motor vehicle to an existing multi-vehicle insurance policy via the after-acquired vehicle clause found in every automobile insurance policy in the Commonwealth, did not represent the purchase of new insurance such that new stacking waivers were required. Despite accepting the Insurance Commission's position regarding the after acquired vehicle clause, our Supreme Court added a proviso. Specifically, our Supreme Court stated:

> We hold that the extension of coverage under an after-acquired-vehicle provision to a vehicle added to a pre-existing multi-vehicle policy is not a new purchase of coverage for purposes of Section 1738(c), and thus, does not trigger an obligation on the part of the insurer to obtain new or supplemental UM/UIM stacking waivers. However, where coverage under an after-acquired-vehicle clause is expressly made finite by the terms of the policy, *see, e.g., **Bird** [**v. State Farm**]*, 165 P.3d [343] at 346-47 [(N.M.Ct.App. 2007)], **Sackett I**, controls and requires the execution of a new UM/UIM stacking waiver upon the expiration of the automatic coverage in order for the unstacked coverage option to continue in effect subsequent to such expiration.

**Sackett v. Nationwide**, 940 A.2d at 334 (footnotes omitted). To understand the **Bird** exception, one must understand the relevant term of the policy.

Initially, an after-acquired-vehicle clause is essentially a contractual grace period, during which the insurer will automatically provide coverage for a newly acquired vehicle for a brief period, until either other insurance is purchased or the insurer is informed of the new vehicle and the insured asks to have the new vehicle put on the existing policy. This clause gives an

insured the time to decide what insurance to ultimately purchase. Otherwise, an insured would be required to purchase insurance contemporaneously with the purchase of the car.[5] This view of the purpose of the after acquired vehicle clause is supported by *Sackett II*, which stated:

> The Commissioner observes that the Insurance Department enforces the MVFRL's requirement that, as a precondition for automobile insurers to issue policies with unstacked UM/UIM coverage, the carriers must first obtain written waivers from the policyholders. However, the Commissioner explains that, throughout Section 1738's seventeen-year history, once policies have been put into place, the Department has not treated the addition of a new vehicle, known in the industry as an "add-on," as a new purchase of coverage. Rather, the Department has deemed this to be an extension of pre-existing coverage. Thus, the Department has not required carriers to issue, or policyholders to execute, serial waivers when vehicles are added to multi-vehicle policies in order to reaffirm the continuation of unstacked UM/UIM coverage.
>
> The Commissioner explains that the mechanism by which vehicles generally are added to existing policies is via "newly acquired vehicle clauses," which are made practically necessary by the mandate of the MVFRL for financial responsibility as a prerequisite to operation of a motor vehicle, *see* 75 Pa.C.S. § 1786, and are included universally within automobile insurance policies issued in Pennsylvania. The clause explicitly permits consumers to extend existing coverage, with the same applicable types of coverage and limits, to new and/or substitute vehicles, with coverage applying automatically upon acquisition, subject to various conditions, including a requirement of timely subsequent notice to the insurer. According to the Commissioner, this procedure facilitates immediate consumer transactions and

---

[5] This might not be a hardship when purchasing a vehicle through a dealership, but might prove burdensome when buying a car through a person to person transaction.

affords predictability and certainty in terms of the availability and scope of coverage. The Commissioner argues that ***Sackett I*** effectively nullifies the newly-acquired-vehicle clause in policies and strips policyholders of the associated benefits.

***Sackett II***, 940 A.2d at 331.

In The Travelers policy at issue herein, Toner was given 30 days in which to inform The Travelers of the purchase of the new vehicle and thereby extend the existing coverage. It must be emphasized that the 30-day grace period provided coverage to the newly acquired vehicle even before The Travelers was informed of the existence of the new vehicle. It is also important to note that our Supreme Court recognized that the after acquired vehicle clause is "included universally within automobile insurance policies issued in Pennsylvania," ***Sackett II***, ***id.***, all after acquired vehicle clauses include a requirement for timely notification.

While the holding in ***Sackett II*** accepted the Insurance Commission's position regarding the application and effect of adding a vehicle to an existing insurance policy through the after acquired vehicle clause, our Supreme Court also included the ***Bird*** exception. Although the holding in ***Bird*** is not relevant to the determination of the instant matter as ***Bird*** expressly did not address UM/UIM stacking or waiver, we will examine the facts and circumstances of ***Bird*** to provide context.

We quote the factual background of ***Bird*** as stated by the New Mexico Court of Appeals:

This case arises from a claim for benefits made by Appellees/Cross–Appellants, Scott and Shana Bird (Parents), after their son, David, was killed in an automobile accident. The material facts are undisputed. The Bird family had four automobile insurance policies with Appellant/Cross–Appellee, State Farm Mutual Automobile Insurance Company (State Farm), at the time of the accident on May 12, 2004. Each policy carried liability and UM coverage of $100,000 per person. Each policy provided thirty-day coverage for a newly acquired car. Prior to April 20, 2004, David drove a Jeep Cherokee (Jeep), which was insured as a named vehicle on one of the four policies. On April 20, 2004, David informed his State Farm agent, Ron Goimarac, that he had purchased a Subaru and that he was trying to sell the Jeep. At that time, the Subaru became the named vehicle on the policy that had originally named the Jeep. Mr. Goimarac informed David that the Jeep would continue to be covered under the terms of the Subaru policy for thirty days but that he would need to obtain a new policy on the Jeep for coverage to continue beyond the thirty-day period. During the thirty-day period, David was riding as a passenger in the Subaru and was killed in an automobile accident.

Parents made a demand for UM coverage on all five cars covered by their State Farm policies. State Farm paid Parents a total of $400,000, consisting of $100,000, based on the per person limit of coverage under the Subaru policy for liability on the driver of the Subaru, and $300,000 in stacked UM coverage under the other three policies. The UM coverage for the Subaru was fully offset by the payment of liability to the coverage limits on the Subaru policy. Therefore, State Farm denied Parents' claim for benefits due under the UM coverage on the Jeep.

*Bird*, 165 P.3d at 345.

Additionally, the New Mexico Court of Appeals recognized,

[W]e are not dealing with a limitation of stacking clause…Rather, the issue at hand is whether the coverage that was extended to the Jeep under the newly acquired car provision of the Subaru policy constituted coverage separate and apart from the limits of coverage on the Subaru.

*Bird*, 165 P.3d at 346.

- 11 -

Importantly, ***Bird*** also provided the entire after acquired vehicle clause.

*Newly Acquired Car*—means a *replacement car* or an *additional car.*

*Replacement Car*—means a *car* purchased by or leased to *you* or *your spouse* to replace *your car.* This policy will only provide coverage for the *replacement car* if *you* or *your spouse:*

1. tell us about it within 30 days after its delivery to *you* or *your spouse;* and

2. pay us any added amount due.

*Additional Car*—means an added *car* purchased by or leased to *you* or *your spouse.* This policy will only provide coverage for the *additional car* if:

1. it is a *private passenger car* and we insure all other *private passenger cars;* or

2. it is other than a *private passenger* [*car* ] and we insure all *cars* owned or leased by *you* or *your spouse* on the date of its delivery to *you* or *your spouse.*

This policy provides coverage for the *additional car* only until the earlier of:

1. 12:01 A.M. Standard Time at the address shown on the declarations page on the 31st day after the delivery of the *car* to *you* or *your spouse;* or

2. the effective date and time of a policy issued by us or any other company that describes the *car* on its declarations page.

**You or *your spouse* may apply for a policy that will provide coverage beyond the 30th day for the *additional car.* Such policy will be issued only if both *you* and the vehicle are eligible for coverage at the time of application.**

*Id*. at 346-47 (emphasis added).

Because the accident occurred within the 30-day period during which both vehicles were covered by the existing policy, the question before the New Mexico court was, while the two vehicles were simultaneously insured under the same policy, did the policy provide separate coverage and limits for the two vehicles or a single limit.[6]

In *Bird*, the after acquired vehicle clause required the insured to "apply for a policy that will provide coverage beyond the 30th day for the additional car." This clause requires the insured to obtain a **different** policy to provide continuing insurance for the additional car. A close examination of the *Bird* policy demonstrates there is no provision for extending coverage upon the purchase of an additional car. The policy provides the insured with a 30-day grace period of coverage, after which the insured must procure new coverage. This interpretation of the Bird policy is supported by *dicta* from both *Bird* and *Sackett II*. Specifically,

> Moreover, a reasonable insured who is told that **a different policy must be obtained** for the Jeep after thirty days, in order to continue the coverage…

*Bird*, 165 P.3d at 350 (emphasis added).

Further,

---

[6] Both the trial court and appellate court in *Bird* determined the language of the after acquired vehicle clause provided separate coverage for each vehicle, thereby allowing Bird's parents to obtain both liability and UM coverage from the same policy.

J-A32006-15

> For example, in ***Bird v. State Farm Mutual Automobile Insurance Company***, 142 N.M. 346, 165 P.3d. 343 (2007), the court reviewed a policy containing an after-acquired vehicle clause that extended coverage to new vehicles only until the thirty-first day after acquisition, thus **requiring insureds to apply for a new policy to acquire coverage thereafter**.

***Sackett II***, 940 A.2d at 333 (emphasis added).

Accordingly, the finite nature of the ***Bird*** after acquired vehicle clause is not the 30-day grace period, rather, it is the fact that under ***Bird***, the insured is required to purchase a different policy at the end of the 30-day period.

This interpretation is also supported by the holding in ***Sackett II***. Our Supreme Court accepted the Insurance Commission's position that adding a vehicle pursuant to the after acquired vehicle clause does not represent the purchase of new insurance. Our Supreme Court also recognized that a timely notice requirement (the 30-day clause in the Toner policy) existed in every Pennsylvania policy. If the finite nature of the after acquired vehicle clause was determined solely by the existence of a 30-day clause, then every automobile insurance policy would be finite. If every Pennsylvania automobile insurance policy is finite, the first sentence of the holding in ***Sackett II***,

> We hold that the extension of coverage under an after-acquired-vehicle provision to a vehicle added to a pre-existing multi-vehicle policy is not a new purchase of coverage for purposes of Section 17378(c), and thus, does not trigger an obligation on the part of an insurer to obtain new or supplemental UM/UIM stacking waivers.

- 14 -

*Sackett II*, 940 A.2d at 334, would be meaningless. A finite after acquired vehicle clause is the *exception* to the general rule; therefore, there must be an additional condition for the *Bird* exception to apply. That additional condition is the requirement that at the end of the 30-day period, the insured must purchase new coverage.

The relevant clause in The Travelers' policy provides the definition of a covered auto as, in relevant part of paragraph J:

2. Any of the following types of vehicle on the date you become the owner:

a. a private passenger auto; or

b. a pickup or van.

This provision (J.2) applies only if:

a. you acquire the vehicle during the policy period,

b. you ask us to insure it within 30 days after you become the owner.

The Travelers Policy, Definitions, J.2. This clause contains no requirement the insured purchase a different policy. Rather, the 30-day limit is the timely notice requirement our Supreme Court recognized existed in all Pennsylvania automobile insurance policies. Because the *Bird* exception does not apply, The Travelers was not required to provide Toner with either new or supplemental waiver of UM/UIM stacking forms.

Although we have resolved this matter by examining the *Bird* exception, *Sackett II* also references *Satterfield v. Erie Insurance*

- 15 -

*Property and Casualty*, 618 S.E.2d 483 (W.Va. 2005). In the interest of full analysis, we will discuss this case.

While *Satterfield* was referenced by our Supreme Court in *Sackett II*, only *Bird* was part of the holding. Nonetheless, *Satterfield* provided our Supreme Court with another form of after acquired vehicle clause, namely continuous coverage, that was used to contrast the finite *Bird* clause.

The *Bird* clause was not defined as finite solely by the 30-day timely notice requirement. The *Satterfield* continuous coverage clause is not defined by a lack of a timely notice requirement.[7] Although *Satterfield* does not mention the grace period, we must assume that such period was contained in the policy. As noted in *Sackett II*, the timely notice requirement is found in every Pennsylvania policy, and with good reason. The after acquired vehicle clause provides initial coverage without notice. If there were no timely notification requirements, the policy would provide unlimited coverage for a newly acquired vehicle without being rated by the insurer. Accordingly, we believe that the *Satterfield* policy contained some form of timely notice requirement. We note that the accident in *Satterfield* occurred within 30 days of acquiring the new car.

_____

[7] To be clear, the grace period of coverage is defined by the timely notice requirement. If the insurance policy gives the insured 30 days to notify the carrier, the insured has a 30-day grace period.

Rather, the continuous nature of the coverage addressed the existence of other collectible insurance. In **Satterfield**, the Williamsons had both family automobile insurance coverage and commercial automobile coverage. The Williamsons purchased a new car, a Pontiac Grand Am. The car was listed on the family automobile insurance policy. Nonetheless, the car still fit the definition of an after acquired vehicle pursuant to the commercial automobile insurance policy. Satterfield was a passenger in the Grand Am when it was involved in a single vehicle accident, causing Satterfield serious injury. While the family automobile insurance policy paid Satterfield the liability limits of that policy, Satterfield sought additional liability coverage from the commercial policy. The trial court denied Satterfield relief on the basis that once the Grand Am was listed on the family policy, it was no longer insured as an after acquired vehicle on the commercial policy. The appellate court disagreed. The after acquired vehicle clause in the commercial policy did not exclude coverage based on other collectible insurance (the family policy). Because the car still fit the definition of an after acquired vehicle, and no exclusion for other collectible insurance existed, Satterfield was entitled to collect liability coverage for the Grand Am from the commercial policy as well; the Erie commercial automobile insurance policy provided continuous coverage in the face of other collectible insurance. The **Satterfield** situation is not relevant to the instant analysis.

The **Sackett III** decision was decided upon the fact that the newly purchased vehicle was actually added to the existing policy by means of an "corrected declarations/endorsement page", **see Sackett III**, 4 A.3d at 638, and not via the after acquired vehicle clause. Instantly, the trial court determined the after acquired vehicle clause was at issue, not an endorsement. Accordingly, we need not analyze **Sackett III**.[8]

In light of the above discussion, we discern no error in the trial court's grant of summary judgment in favor of The Travelers.

Order affirmed.

Judge Stabile joins this opinion.

Judge Shogan files a dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/2016

---

[8] The **Sackett III** decision did not define what it meant by adding the vehicle to the existing policy via a "corrected declarations/endorsement page." We suspect endorsement versus after acquired vehicle clause may be a difference without a distinction. If an insured obtains coverage contemporaneously with the purchase of a vehicle, the after acquired vehicle grace period is not implicated.