J. A33014/15

2017 PA Super 96

| | | |
|---|---|---|
| JOHN M. PERGOLESE AND | : | IN THE SUPERIOR COURT OF |
| PEGGY DOUG PERGOLESE | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| THE STANDARD FIRE INSURANCE CO., | : | |
| ONE OF THE TRAVELERS INSURANCE | : | |
| COMPANIES D/B/A TRAVELERS | : | |
| PROPERTY CASUALTY AND TRAVELERS | : | |
| GROUP | : | |
| | : | |
| APPEAL OF:  THE STANDARD FIRE | : | |
| INSURANCE CO., | : | No. 1467 EDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment Entered April 11, 2014,
in the Court of Common Pleas of Montgomery County
Civil Division at No. 10-36947

BEFORE:  FORD ELLIOTT, P.J.E., STABILE AND STRASSBURGER,* JJ.

OPINION BY FORD ELLIOTT, P.J.E.:                **FILED APRIL 11, 2017**

Standard Fire Insurance Company ("Standard Fire") appeals from the

judgment entered April 11, 2014, in this declaratory judgment action.  The

trial court granted appellees' motion for summary judgment after finding

that they were entitled to stacking of underinsured motorist benefits.  After

careful review, we affirm.

> The relevant facts and procedural history
> underlying this appeal are as follows.  Appellees are
> husband and wife who reside in Worcester,
> Montgomery County.  In the early 1990s, Appellees
> applied for personal automobile insurance with

_____

* Retired Senior Judge assigned to the Superior Court.

Standard Fire's predecessor in interest, Aetna Insurance Company, through their insurance agent. (Action for Declaratory Judgment ("Complaint"), filed 12/17/10, at ¶ 4; Answer with New Matter, filed 4/28/11, at ¶¶ 34-35; Appellant's Motion for Summary Judgment, filed 12/12/13 ("Motion"), at ¶ 2). On July 27, 1994, Appellees signed an Aetna Option Selection Form indicating that they chose non-stacked underinsured motorist ("UIM") coverage on policy number 020185337-101-1 ("20185337"). (Motion, Exhibit C).

On May 29, 1996, Peggy Pergolese signed a rejection of stacked UIM coverage form for this policy on behalf of Appellees with John Pergolese's full knowledge and consent. (Motion at ¶ 3). At that time, the insurance policy covered four (4) vehicles. (*Id.* at ¶ 4). Specifically, for the 1996 coverage year, the policy insured the following vehicles: 1989 Chevy Corvette, 1989 Mazda B-2200, 1988 Plymouth Voyager and 1993 Mazda MX-6. (Cross Motion for Summary Judgment, filed 1/13/14 ("Cross Motion"), at ¶¶ 7-8; Exhibits F and G). On August 5, 1996, Appellees executed a form waiving stacked UIM coverage for the second policy, number 036766029-101-1 ("36766029"). (Cross Motion at ¶ 6; Exhibit E). The second policy provided coverage for one (1) vehicle.[Footnote 2]

> [Footnote 2] The Travelers system does not allow the placement of more than four (4) personal vehicles on a policy at one time. (N.T. Deposition of Cody D. Gilmore, 7/22/13 (Cross Motion, Exhibit R) at 58-59[)]; [t]herefore, policy holders wishing to insure more than four personal vehicles at a time are required to obtain a second policy. (*Id.*).

On or about November 19, 1996, Appellees sought to remove the 1988 Plymouth Voyager from coverage on policy number 20185337 and replace it with a 1993 Nissan Pathfinder. (Cross Motion at ¶ 9; Auto Change Form, Exhibit H). The amended

declaration sheet effective November 19, 1996 reflected coverage for the following vehicles: 1989 Chevy Corvette; 1989 Mazda B-2200, 1993 Nissan Pathfinder and 1993 Mazda MX-6. (*Id.* at ¶ 10; Exhibit I). Appellees renewed the policy every six (6) months and the declaration sheets showed non-stacked UIM benefits in the amount of $100,000.00. The declaration sheets on policy number 20185337 dated up to and including January 27, 1998, also reflected coverage for the same four (4) vehicles. (*Id.* at ¶ 11; Exhibits J, K and L).

On February 23, 1998, Appellees asked their insurance agent to remove the 1989 Mazda B-2200 from their policy. Unlike their request on November 19, 1996, Appellees did not add a replacement vehicle. (Cross Motion at ¶ 12; Auto Change Form, Exhibit M). The amended declarations page effective February 23, 1998, lists coverage for only three (3) vehicles and a decreased premium. (*Id.* at ¶ 13; Exhibit N).

On April 8, 1998, forty-four (44) days later, John Pergolese called Appellees' insurance agent to request auto insurance coverage for an additional vehicle before he took possession. Mr. Pergolese requested that the agent fax a copy of the insurance card so that Mr. Pergolese would have proof of insurance before taking ownership of a 1990 Ford F-150. (*Id.* at ¶ 14; Auto Change Form, Exhibit O). As requested, the agent faxed a copy of the insurance card with an effective date of April 8, 1998, to the location where Mr. Pergolese was obtaining the tags and title. (*Id.* at ¶ 14-15; Exhibit P). The amended declarations page effective April 8, 1998, showed the premium increase and listed four vehicles as follows: 1989 Chevy Corvette, 1993 Nissan Pathfinder, 1993 Mazda MX-6 and 1990 Ford F-150. (*Id.* at ¶ 16, 18; Exhibit Q).

Appellees' Standard Fire Auto Policy provides in pertinent part as follows:

J.    "Your covered auto" means:

1.    Any vehicle shown in the Declarations.

2.    Any of the following types of vehicles on the date you become the owner:

   a.    a private passenger auto; or

   b.    a pickup or van.

   This provision (J.2.) applies only if:

   a.    you acquire the vehicle during the policy period;

   b.    you ask us to insure it **within 30 days after you become the owner**; and

   c.    with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

   If the vehicle you acquire **replaces** one shown in the Declarations, it will have the same coverage as the vehicle it replaced.  You must ask us to insure a **replacement vehicle within 30 days** only if:

   a.    you wish to add or continue Damage to Your Auto Coverages; or

> > b.   it is a pickup or van used in any "business" other than farming or ranching.

(Policy No. 20185337, Personal Auto Policy at 1; Exhibit A to both Motions for Summary Judgment) (emphasis added).

Appellant did not request a new waiver of stacked coverage from Appellees after the addition of the 1990 Ford F-150 to the three vehicle policy under 20185337. (Cross Motion at ¶ 23). Appellees continued to insure the same four vehicles under policy number 20185337 through July 27, 2001. (*Id.* at ¶ 24; Exhibit A). For the period of July 30, 2000, to July 30, 2001, Appellees insured one vehicle, a 1992 Toyota Pickup under policy number 36766029. (*Id.* at ¶ 25; Exhibit B).

On July 23, 2001, John Pergolese suffered severe injuries when a drunk driver rear ended his 1993 Mazda MX-6. (Motion at ¶ 15; Cross Motion at ¶ 26). Appellees timely submitted a claim for underinsured motorist benefits to Appellant upon receiving the liability policy limits from the tortfeasor and after receiving Appellant's consent to settle and waiver of subrogation. (Complaint at ¶ 8; Answer at ¶ 8; Motion at ¶ 16). Appellees asserted that they were entitled to stack UIM benefits according to the number of vehicles on their two (2) policies up to a limit of $500,000.00. (Complaint at ¶ 27; Motion at ¶ 17). Appellant denied that Appellees were entitled to stack their policy benefits. (Motion at ¶ 18).

On December 17, 2010, Appellees filed an action for declaratory judgment. On April 28, 2011, Appellant filed its answer with new matter. Appellees replied to the new matter on June 28, 2011. The parties conducted discovery, including requests for admissions and depositions.

In particular, an underwriter for Travelers Insurance testified at deposition as follows:

Q.	Well, my question to you was from your understanding of Travelers, the insurance, if someone owns four vehicles on a policy and they delete a car, so now there's [sic] three cars on that policy, and a month and a half or two months later that insured buys a new car and asks for it to be added to the policy?

A.	That would be an additional vehicle.

Q.	Okay. That would be an addition, an additional vehicle; is that correct?

A.	That's correct.

Q.	All right. That would not be considered a replacement vehicle?

A.	Not if it was -- if it was not replaced at that time.

Q.	Okay. So, meaning that it's your understanding at Travelers that dealing with replacement vehicles is when cars are added and deleted at the same time?

A.	Correct.

\* 	\* 	\* 	\*

Q.	All right. I don't want -- so somebody has four cars and they delete a vehicle on that policy, all right? And in this case John Pergolese owned four cars on the policy, and one of the cars he deleted, okay, because it was junked or there was an issue. It didn't run anymore.

A.	Okay.

Q.   And then a month and a half later he buys a car and adds a new car to that policy.

A.   That would be an additional vehicle.

Q.   Okay.   That would not be considered replacement because it wasn't done at the same time, but that would [be] an additional vehicle?

A.   That is correct.

Q.   Because when they're advising the agent of the new car, he's purchasing coverage on that new car?

A.   That is correct.

(N.T. Deposition of Cody D. Gilmore, 7/22/13 ("N.T. Gilmore Deposition"), at 54-56).   Mr. Gilmore also agreed that the addition of the vehicle increased the premium as a policy change.  (***Id.*** at 68).

Mr. Gilmore explained that "the agents request the majority of changes, and they process them on [Travelers'] system within the office, their office." (***Id.*** at 19).   The addition of a vehicle to a policy is never done by endorsement, the addition is considered a policy change.  (***Id.*** at 32-33).   At Travelers "[a]n endorsement is a broadening or reduction or change in a coverage level." (***Id.*** at 33).  Mr. Gilmore also testified as follows:

Q.   Is it your understanding that the after-acquired clause that we just referenced is a provision in the policy that insures a new vehicle from the time that insured gets the vehicle until he calls somebody from Travelers to tell them that he just bought a new car and wants coverage?

A.   This provides the coverage between the time that the vehicle -- they own the vehicle and the time they contact the agent.

Q.   Okay.  So once -- so, right, so the car is insured from the time that they buy it up until they call Travelers to tell -- to tell them about it?

A.   Right, that they have advised that they -- once they have purchased and they are the owner of the vehicle, this is when this -- that's where they obtain their coverage automatically is once they own the vehicle.

Q.   All right.  What does Travelers require, if you know, from the insured once they call to say I got a new car whatever day it was and I want it insured?

A.   The agent would inquire if there was a lienholder, the VIN number, and they would make the change to the policy to add it at that time.

Q.   Okay.  So, once they got -- if there's a lienholder, if there is the VIN, then that -- then would it be -- in this case, it was an agent that got the call.  Then that agent would add the policy?

A.   That's correct.  They would process the change.

(*Id.* at 44-45).

Appellant filed its Motion for summary judgment on December 12, 2013.  Appellees responded in opposition on January 13, 2014, and filed their cross motion at the same time.  Appellant replied to the cross motion on February 11, 2014.  Upon review of the record, the issues presented to

> this court, the applicable law and after hearing argument, the undersigned denied Appellant's Motion and granted Appellees' cross motion by separate orders dated April 11, 2014. Appellant filed a notice of appeal from the court's order granting the cross motion on May 8, 2014. On May 9, 2014, Appellant filed a second notice of appeal from the court's order denying their Motion. The undersigned issued an order on May 27, 2014, directing Appellant to file a Concise Statement of the Errors Complained of on Appeal ("concise statement"). Appellant filed two concise statements on June 6, 2014.

Trial court opinion, 5/29/15 at 2-9.[1]

Appellant, Standard Fire, has raised the following issues for this court's review:

> 1. Did the trial court err in granting summary judgment in favor of Plaintiffs/Appellees and in denying Defendant's/Appellant's Motion for Summary Judgment, where vehicles were replaced under the continuous after-acquired vehicle provision of the Standard Fire Policy, and were not replaced by endorsement or through the purchase of new insurance, therefore not requiring the execution of new waivers rejecting stacked underinsured motorist benefits?
>
> 2. Even if this Court determines that the Ford F-150 constituted an additional vehicle under the Policy, did the trial court still err in granting summary judgment in favor of Plaintiffs/Appellees and in denying Defendant's/Appellant's Motion for Summary Judgment, where the after-acquired vehicle provision of the Standard Fire Policy provided for continuous coverage?

---

[1] On July 13, 2015, this court quashed the appeal at No. 1466 EDA 2014, taken from the April 11, 2014 order denying appellant's motion for summary judgment, as unnecessary and duplicative.

Appellant's brief at 5.

We begin our analysis with our standard of review:

> When reviewing a trial court's decision to grant a motion for summary judgment, we adhere to the following standard and scope of review.
>
> > We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.
>
> ***Jones v. Unitrin Auto and Home Insurance Co.***, 40 A.3d 125, 126-127 (Pa.Super. 2012), quoting ***Erie Insurance Exchange v. Larrimore***, 987 A.2d 732, 736 (Pa.Super. 2009) (citation omitted). ***Jones*** further noted that "ordinary summary judgment procedures are applicable to declaratory judgment actions." ***Id.*** at 127.

***Shipp v. Phoenix Ins. Co.***, 51 A.3d 219, 221 (Pa.Super. 2012).

This case involves the interpretation of the following statute:

## § 1738. Stacking of uninsured and underinsured benefits and option to waive

(a) **Limit for each vehicle.**—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

(b) **Waiver.**—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

(c) **More than one vehicle.**—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to

> reflect the different cost of such coverage.
>
> 75 Pa.C.S.A. § 1738 (in pertinent part).

*Id.* at 221-222.

As in ***Shipp***,

> This case particularly involves the interpretation of section 1738(c) and whether the addition and/or substitution of a new vehicle under the policy constitutes a purchase of additional UM/UIM coverage, requiring the insurer to present the insured with a new opportunity to waive stacked coverage. This question has been partially answered by our supreme court in two separate decisions involving the same parties.
>
> In ***Sackett v. Nationwide Mutual Insurance Co.***, 591 Pa. 416, 919 A.2d 194 (2007) ("***Sackett I***"), the insured acquired a policy for two vehicles and initially waived stacked UM/UIM coverage in the amount of $200,000 ($100,000 unstacked). The insured later added a third vehicle to the policy, and the insurer did not provide the insured with the opportunity to again waive stacked coverage. Following an accident, the insured filed a declaratory judgment action seeking $300,000 in stacked coverage under section 1738 because the insurer failed to provide the insured with the opportunity to waive stacked UM/UIM coverage at the time the third vehicle was purchased and added to the policy.
>
> The trial court ruled that when the same named insured simply adds a vehicle to an existing insurance policy, the insurer does not need to acquire a second waiver of stacked UM/UIM coverage. This court affirmed that decision. On appeal, however, the ***Sackett I*** court held that the addition of a new vehicle to an existing multi-vehicle policy constitutes a purchase under section 1738(c), such that the insurer was responsible for again acquiring a waiver to stacked coverage.

Following this decision, the supreme court granted re-argument to explore the impact of newly acquired vehicle clauses, almost universally contained in vehicle insurance policies, on its decision in *Sackett I*. In *Sackett v. Nationwide Mutual Insurance Co.*, 596 Pa. 11, 940 A.2d 329 (2007) ("*Sackett II*"), the court noted that there are two common forms used for newly acquired vehicle clauses. The first type provides automatic coverage upon acquisition of the additional new vehicle, but lapses after a specified, finite amount of time, requiring the insured to apply for new coverage thereafter. The second type provides continuing coverage, usually requiring the insured only to give notice that a new vehicle has been acquired. The *Sackett II* court held that the second type of newly acquired vehicle clause does not trigger an obligation by the insurer to obtain a second waiver of stacked coverage; however, where the newly acquired vehicle clause is of the lapsing, finite variety, *Sackett I* still applies and the insurer must again acquire a waiver of stacked coverage.[Footnote 1]

> [Footnote 1] Ultimately, on remand to the trial court, the court conducted a non-jury trial and again ruled that the Sacketts could stack their coverage. On appeal, this court found that newly acquired vehicle provisions of Nationwide's policy with the Sacketts was of the lapsing finite variety which the supreme court had held to require the re-obtaining of waiver by the insurer. As Nationwide had failed to re-obtain such waiver, this court ruled that the trial court properly permitted the coverage to be stacked. *Sackett v. Nationwide Mutual Insurance Co.*, 4 A.3d 637 (Pa.Super. 2010) ("*Sackett III*"), *appeal denied*, ___ Pa. ___, 34 A.3d 83 (2011).

*Id.* at 222.

In **Bumbarger v. Peerless Indem. Ins. Co.**, 93 A.3d 872 (Pa.Super. 2014) (**en banc**), this court's most recent **en banc** pronouncement on the stacking issue, we held that when an insured takes ownership of a vehicle and simultaneously informs his insurer of the new vehicle, the language and purpose of the after-acquired vehicle provision in the policy is never triggered. An after-acquired vehicle provision merely extends existing coverage until the insured notifies the insurer that he wishes to insure the new vehicle under his policy with the insurer. The after-acquired vehicle clause extends temporary, stop-gap coverage, thereby protecting the insured until the policy can be amended.[2] The addition of the vehicle to the policy by the insurer, pursuant to **Sackett I** and **III**, requires a new

---

[2]
> Initially, an after-acquired-vehicle clause is essentially a contractual grace period, during which the insurer will automatically provide coverage for a newly acquired vehicle for a brief period, until either other insurance is purchased or the insurer is informed of the new vehicle and the insured asks to have the new vehicle put on the existing policy. This clause gives an insured the time to decide what insurance to ultimately purchase. Otherwise, an insured would be required to purchase insurance contemporaneously with the purchase of the car.[Footnote 5]
>
>> [Footnote 5] This might not be a hardship when purchasing a vehicle through a dealership, but might prove burdensome when buying a car through a person to person transaction.

**Toner v. Travelers Home and Marine Ins. Co.**, 137 A.3d 583, 588 (Pa.Super. 2016).

stacking waiver. In **Bumbarger**, we did not need to look to the analysis of **Sackett II** which only addressed the implication of the after-acquired vehicle clause.[3]

In that case, Peerless issued Helen Bumbarger ("Helen") a personal automobile policy providing motor vehicle coverage for two vehicles, a 1980 Ford F-150 pick-up truck and a 1998 Ford Taurus. **Id.** at 873. Helen rejected stacking of UM/UIM coverage by completing the appropriate forms. **Id.** The **Bumbarger** court described the salient facts as follows:

> On July 24, 2007, Helen purchased a third vehicle, a 1995 Ford F–150 pick-up truck. That same day, she notified her insurance agent of the purchase and requested that it be added to and insured under the Policy. The insurance agent notified Peerless about the third vehicle and the vehicle was added to the Policy through a validly executed endorsement, effective July 24, 2007. On October 2, 2009, Helen notified her insurance agent that she had purchased a fourth vehicle, a 1985 Ford Bronco; she requested that this vehicle also be added to and insured under the Policy. The agent notified Peerless and coverage of the fourth vehicle became effective as of the date of purchase; unlike the third vehicle, this fourth

---

[3] However, it is important to note that in **Sackett II**, "where coverage under an after-acquired-vehicle clause is expressly made finite by the terms of the policy, **Sackett I** controls and requires the execution of a new UM/UIM stacking waiver upon the expiration of the automatic coverage in order for the unstacked coverage option to continue in effect subsequent to such expiration." **Sackett II**, 940 A.2d at 334 (citation and footnote omitted). In other words, when an insured notifies an insurer that he has obtained an additional vehicle and that vehicle is added to the policy by the insurer, then the after-acquired vehicle extended coverage expires immediately and a new stacking waiver is required. In most cases, according to **Sackett II**, only replacement vehicles would be subject to the extended continuous coverage provisions of an after-acquired vehicle provision in that one vehicle merely replaces another under the same conditions and coverages of the policy.

> vehicle was not added by way of endorsement, but rather its addition was reflected by an amended declarations page.
>
> On December 3, 2009, while driving the 1995 Ford pick-up (third vehicle) Helen was involved in a motor vehicle accident with an uninsured vehicle; she subsequently submitted a claim for UM benefits under the Policy. Helen claimed that she was entitled to stacked UM benefits; Peerless maintained that the original waiver of stacked UM/UIM benefits under the Policy, executed on May 17, 2007, remained in effect.

*Id.* at 873-874 (footnote omitted).

The trial court granted summary judgment for the Bumbargers, finding that because the third vehicle was added to the policy pursuant to an endorsement, the vehicle was effectively added to the policy's declarations and was covered under the general terms of the policy and not the newly-acquired-vehicle clause. *Id.* at 874. Therefore, the trial court determined that *Sackett I* required Peerless to obtain a new stacking waiver from the Bumbargers when the third vehicle was added to the policy. Because Peerless failed to do so, the Bumbargers were entitled to stacked UM coverage as a matter of law. *Id.* Furthermore, since the Bumbargers were entitled to stacking under the general terms of the policy, the trial court did not determine the duration of any coverage under the policy's newly-acquired-vehicle clause as discussed in *Sackett II*. *Id.* at n.6.

On appeal, this court affirmed, finding that because the Bumbargers added the third vehicle to the policy by way of endorsement, the newly-acquired-vehicle clause was never triggered:

> [I]n both **Sackett** and this case, the vehicles were added to an existing policy; they were not added to replace a vehicle already covered under the policy. Moreover, although the policies in both **Sackett** and the instant case had after-acquired vehicle clauses, because the additional cars were added on pursuant to the policy's endorsement provision immediately after being purchased and were placed on the policy's declarations' page, the after-acquired vehicle clauses became irrelevant.

**Id.** at 878. "Here, the third vehicle added to the Peerless policy in July 2007 was added by endorsement at the time of purchase onto the declarations page of the Policy; at this point, the vehicle was covered by the original policy; therefore, the newly-acquired vehicle clause was not triggered." **Id.** Relying on **Sackett I** and **Sackett III**, this court in **Bumbarger** concluded that the Bumbargers were statutorily entitled to the stacked limits of UM coverage:

> Therefore, because the Bumbargers added their third vehicle to the Peerless Policy by way of an endorsement, the new vehicle was covered under the general terms of the Peerless policy and not its after-acquired vehicle clause. **Sackett III**, **supra**. Moreover, because this new vehicle was added to the Peerless Policy before the Bumbargers' accident, Peerless was required, under **Sackett I**, to obtain a new waiver from the Bumbargers declining stacked coverage. **Id.**

**Id.** at 879.

As in ***Bumbarger***, the policy in the instant case includes a newly-acquired-vehicle clause which does not apply to any vehicles shown in the Declarations. ***See Bumbarger***, 93 A.3d at 878 ("However, for this coverage to apply to a 'newly acquired auto' **which is in addition to any vehicle shown in the Declarations**, you must ask us to insure it within 14 days after you become the owner," quoting Peerless Automobile Policy, Personal Auto Special Provisions (Pennsylvania Definitions) at Section K.2 (emphasis in ***Bumbarger***)). Here, appellees notified their agent of the new vehicle, the 1990 Ford F-150, and requested proof of coverage before the purchase was completed. The agent then faxed a copy of the insurance card and issued amended declarations pages reflecting coverage of the new vehicle at an increased premium. As in ***Bumbarger***, the after-acquired-vehicle provision in the Standard Fire policy is simply inapplicable. Therefore, we need not consider whether it is continuous or finite. Pursuant to ***Sackett I***, ***Sackett III***, and ***Bumbarger***, appellees' addition of the 1990 Ford F-150 to the policy constituted a new "purchase" of UM/UIM coverage under Section 1738 of the MVFRL and required the execution of a new UM/UIM stacking waiver.

We find appellant's reliance upon ***Shipp***, ***supra***, and ***Toner***, ***supra***, to be misguided. In ***Shipp***, the policy at issue had an identical after-acquired-vehicle clause as the policy in this case. ***Shipp***, 51 A.3d at 223. However, ***Shipp*** involved a replacement for an existing vehicle, not an additional

vehicle being added to the policy. *Id.* at 222-223. The after-acquired-vehicle clause of the policy at issue in *Shipp* provided continuing, uninterrupted coverage on a replacement vehicle without notice unless collision coverage was added or continued or a business vehicle was involved. *Id.* at 223. The court in *Sackett II*, as discussed above, held that continuing coverage subject only to a notice requirement did not require the insurer to re-obtain waiver of stacked UM/UIM coverage. *Id.* Since the insureds in *Shipp* simply replaced one vehicle with another at the same time, there was no change in the amount of UM/UIM coverage available to the Shipps, and the only change was in the identity of the covered vehicle. *Id.* at 224. As such, no new insurance coverage was purchased and Phoenix was not required to obtain a new waiver of stacked coverage from the Shipps. *Id.*

Here, by contrast, the 1990 Ford F-150 was not a replacement vehicle. Rather, it was added to the policy 44 days after appellees removed the 1989 Mazda B-2200 from their policy. At that time, the amended declarations pages listed only three vehicles and a decreased premium. Forty-four days later, appellees notified their insurance agent of their intention to purchase the 1990 Ford F-150 and amended declarations pages were issued. The 1990 Ford F-150 was not a replacement vehicle, as admitted by Mr. Gilmore, appellant's underwriter. Therefore, *Shipp* is inapposite.

Appellant also cites **Toner**, in which it was determined that the insurer, Travelers, was not required to provide Toner with a new waiver of stacking form when she added cars to her single vehicle policy. However, in **Toner**, the after-acquired-vehicle clause was at issue. **Toner**, 137 A.3d at 592. As such, **Toner** is distinguishable. We determine that the case **sub judice** is controlled by our supreme court's decisions in **Sackett I**, **Sackett III**, and this court's **en banc** decision in **Bumbarger**.

Finally, appellant argues that the trial court should not have permitted inter-policy stacking where the stacking waiver applicable to the single-vehicle policy remained valid and in effect at the time of the accident. (Appellant's brief at 36 n.5.) According to appellant, at most, appellees would be entitled to $400,000 of stacked UIM coverage, not $500,000. This issue was not raised in the court below or in appellant's Pa.R.A.P. 1925(b) statement. Therefore, it is deemed waived. Pa.R.A.P. 1925(b)(4)(vii); Pa.R.A.P. 302(a).

Judgment affirmed.


Strassburger, J. files a Concurring Opinion.

Stabile, J. files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2017